UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PATRICIA E. PETTIT,

               Plaintiff,                            Civil Action No.
                                                                08-CV-12205
vs.

                                                       HONORABLE PAUL D. BORMAN
STEPPINGSTONE, CENTER FOR THE
POTENTIALLY GIFTED, et al.,

               Defendants.
_____/


## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION FOR RECONSIDERATION

### I. INTRODUCTION

This is an employment retaliation case under the Fair Labor Standards Act ("FLSA"). Plaintiff, a former employee of the Steppingstone School for Gifted Children ("Steppingstone"), claims that she was terminated from her position as Director of Human Resources in retaliation for raising concerns that Steppingstone was in violation of the FLSA.

On September 1, 2009, the Court issued an Opinion and Order ("Opinion") in which it granted summary judgment in favor of Defendants. *See* docket entry 36. On September 16, 2009, Plaintiff filed a Motion for Rehearing/Reconsideration. *See* docket entry 38. In her motion, Plaintiff advances three arguments as follows:

    1.      The Court incorrectly concluded, without explanation, that there was "no direct evidence of retaliation," in this case, even though Plaintiff argued that there was direct evidence and, as a result, that the burden shifting analysis of *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) should not apply.

    2.      The Court improperly invaded the province of the jury by making credibility determinations, weighing the evidence and drawing inferences from the facts. *See Patterson v. Hudson Area Schools*, 551

F.3d 438 (6th Cir. 2009).

3.     The Court made erroneous factual conclusions, including that Defendant Morse had consulted with an attorney as well a former human resource representative from Chrysler, Nancy Furman, and the then Assistance Chief of Police for the Farmington Hills Police Department, Richard Niemesto, regarding the overtime issue and had been assured that Steppingstone was in compliance prior to Plaintiff's complaint to the Executive Committee of the Board of Trustees, when it was established at oral argument, with citations to the depositions, that such representations by Defendants on the issue were not true.

For the reasons that follow, the Court rejects Plaintiff's arguments and, accordingly, will deny the motion.

## II.  LEGAL STANDARD

Motions for reconsideration are governed by E.D. Mich. LR 7.1(g)(3), which states, in relevant part, that a party moving for reconsideration must "not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case."

## III.  ANALYSIS

### A.  Plaintiff's First Argument

In its Opinion, the Court stated as follows: "Where, as here, there is no direct evidence of retaliation, courts employ a burden-shifting test to evaluate circumstantial evidence of retaliation." Opinion at 12.  Plaintiff argues in her motion for reconsideration that the Court incorrectly concluded, without explanation, that there was no direct evidence of retaliation in this case and that, as a result, it should not have applied the *McDonnell-Douglas* burden-shifting framework.

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v.*

2

*Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "With direct evidence, the existence of unlawful discrimination is 'patent.'" *Bartlik v. United States Dep't of Labor*, 73 F.3d 100, 103 n.5 (6th Cir. 1996) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995)). For example, "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Plaintiff argues that all of the following constitute direct evidence of retaliation: (1) Morse's admission that after Plaintiff went to the Executive Committee with her FLSA concerns, there was an insistence that Plaintiff sign an employment contract that, as it turns out, was less favorable to Plaintiff than her previous contract; (2) the close proximity in time between Plaintiff reporting her FLSA concerns to the Executive Committee, on the one hand, and the adverse employment actions taken against her, on the other hand; and (3) Morse's statement to the Executive Committee that Plaintiff should have "no outlet" for her complaints.

Plaintiff's argument is unpersuasive. None of this evidence qualifies as direct evidence of retaliation because the evidence does not *require* the conclusion that unlawful retaliation was a motivation behind Morse's actions. With regard to (1), above, Morse testified during her deposition as follows:

> Q:   In February 2008 after [Plaintiff] went to the board regarding her concerns, there was an insistence that she sign a written employment agreement; isn't that right?
>
> A:   Yes.

Morse Dep. 207:5-9. This statement in no way compels the conclusion that Morse was insisting that Plaintiff sign a less favorable contract *because* she had gone to the board.

3

With regard to (2), above, one could infer a retaliatory motive from the close proximity in time between Plaintiff reporting her FLSA concerns to the Executive Committee and the adverse employment actions taken against her but temporal proximity is certainly not direct or "patent" evidence of retaliation.

Finally, with regard to (3), above, Morse's statement that Plaintiff should have "no outlet" for her complaints is not direct evidence of retaliation because it does not shed light on the motivation behind the adverse employment actions taken against Plaintiff.

**B. Plaintiff's Second Argument**

Next, Plaintiff argues that the Court invaded the province of the jury because it improperly engaged in credibility determinations and weighed evidence. Specifically, Plaintiff takes issue with two passages contained in the Court's Opinion, arguing that both demonstrate that "the Court had formed an impression of Plaintiff's credibility." The first passage is contained on pages 34-35 of the Court's Opinion and reads as follows:

> Lastly, the evidence actually casts substantial doubt on the credibility of *Plaintiff's behavior* after she engaged in protected behavior. Plaintiff threatened to report the alleged unlawful activity to the U.S. Department of Labor unless Steppingstone established a "Wage and Hour" program that was in compliance with the law by February 15, 2008. Yet, despite this explicit threat to the Executive Committee and her repeated concerns that "Steppingstone is not administering in ways that are professional, ethical, practical, or legal," (Defs.' Br. Ex. 9, March 6, 2008 Letter), Plaintiff never reported anything to the U.S. Department of Labor. If Plaintiff was so confident that her take on the FLSA issues was correct and that Defendants were not just incorrect but also carrying out their administrative functions illegally and unethically, then why did she not report Defendants to the U.S. Department of Labor on February 15, 2008, or anytime thereafter, for that matter?

> While Plaintiff did engage in statutorily protected behavior by threatening to report the matter to the U.S. Department of Labor, that does not give her free reign to continue to press the issue and call her superior's administrative abilities into question after she had been informed that her

superior sought and received a professional opinion on the issue. To the extent that Plaintiff suffered materially adverse employment actions after she threatened to report the non-compliance to the U.S. Department of Labor, the adverse actions do not appear to have stemmed from her threat. Rather, they seemed to have stemmed from her insistence on pressing an issue that even she did not believe in enough to properly carry out. Plaintiff's threat was empty, both in substance and motivation.

Opinion at 34-35 (emphasis in original).  The second passage is contained on page 29 of the Court's

Opinion and reads as follows:

First, as mentioned above, Defendants provide a legitimate, non-retaliatory reason for stripping Plaintiff of her human resources responsibilities: they needed her to focus her efforts on recruitment and retention efforts because of the relocation issue. Admissions and recruitment were a top priority for Steppingstone at this time, so it made sense for Defendants to strictly limit Plaintiff's duties to admissions and recruitment.  This is reasonable especially given that even after Defendants informed Plaintiff that they were aware of the FLSA issue and dealing with it appropriately, she continued to press the issue with extremely lengthy e-mails.  Plaintiff would not let the issue go, and instead of contacting the Department of Labor with her concerns, she pressed Morse and the Executive Committee further on the issue.

Opinion at 29.

As recently stated by the Sixth Circuit,

When we review a grant of summary judgment, we are forbidden to weigh the evidence or to draw the inferences the dissent insists upon drawing. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury functions*, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (emphasis added)). Our job is to look at the facts and consider them in the light most favorable to the nonmoving party, regardless of our own personal views of how much credence we would give a particular piece of evidence if we were on a jury.

*Patterson v. Hudson Area Schs.*, 551 F.3d 438, 445 n.6 (6th Cir. 2009).

Plaintiff's argument with respect to the first passage is unpersuasive because the passage

5

constitutes dictum and is therefore not essential to the Court's holding. Plaintiff's argument with

respect to the second passage is also without merit because the Court simply does not stray from the

appropriate legal standard. The first sentence reiterates the Court's holding on the issue of whether

Defendants provided a legitimate, non-retaliatory reason for one of the adverse employment actions

taken against Plaintiff. The remainder of the paragraph explains the holding, citing certain

uncontested facts that are adequately supported by the evidence.

### C. Plaintiff's Third Argument

The Court determined that Plaintiff did not engage in protected activity until February 1,

2008, the date on which Plaintiff sent an e-mail to the Executive Committee warning that "[s]hould

Steppingstone decide not to seek the support of professional resources to rectify the problem . . . ,

I see no choice but to report unlawful activity to the U.S. Department of Labor." *See* Opinion at 14-

15. In her motion for reconsideration, Plaintiff argues that she engaged in protected activity well

before February 1, 2008, that the Court's determination regarding the February 1, 2008, trigger date

was therefore erroneous, and that the Court should vacate its Opinion on this basis.

The Court disagrees because, for the reasons stated on page 14 of the Opinion, Plaintiff did

not engage in protected activity until February 1, 2008. Again,

> [i]n order to engage in protected activity under [the FLSA], the employee
> *must* step outside his or her role of representing the company *and* either file
> (or threaten to file) an action adverse to the employer, actively assist other
> employees in asserting FLSA rights, or otherwise engage in activities that
> reasonably could be perceived as directed towards the assertion of rights
> protected by the FLSA.

*Robinson v. Wal-Mart Stores, Inc.*, 341 F. Supp.2d 759, 763 (W.D. Mich. 2004) (emphasis added).

Here, Plaintiff did not "file (or threaten to file) an action adverse to the employer, actively assist

other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could

be perceived as directed towards the assertion of rights protected by the FLSA" until February 1, 2008.  In order to engage in protected activity, Plaintiff must *both* (1) "step outside . . . her role of representing the company" *and* (2) do one of the three things mentioned in the preceding sentence. While Plaintiff argues that she stepped outside of her role of representing Steppingstone before February 1, 2008, she does not also argue that she "file[ed] (or threaten[ed] to file) an action adverse to the employer, actively assist[ed] other employees in asserting FLSA rights, or otherwise engage[d] in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA" prior to February 1, 2008.

Additionally, Plaintiff's argument that she stepped outside her role of representing the company in December 2007, when she contacted Steppingstone's outside law firm, is foreclosed by Plaintiff's own deposition testimony in which she testified that she contacted the law firm in her capacity as an employee at Steppingstone.  (Pl.'s Dep. 71:18-20).  For these reasons, and for the reasons stated in its Opinion, the Court rejects Plaintiff's argument that she engaged in protected activity prior to February 1, 2008.

Moreover, even if Plaintiff engaged in protected activity before February 1, 2008, the Court would still deny the present motion.  Plaintiff contends that the date on which she first engaged in protected activity is important because, in granting summary judgment in favor of Defendants, the Court emphasized "that many of the alleged adverse employment actions began before Plaintiff threatened to report the alleged FLSA violations to the U.S. Department of Labor—that is, before Plaintiff engaged in statutorily protected behavior."[1]  *See* Opinion at 33.  However, despite noting that some of the adverse employment actions occurred before the date on which Plaintiff first

---

[1] Of course, any purported adverse employment actions that occurred *before* the date on which Plaintiff engaged in protected activity could not have been retaliatory.

7

engaged in protected activity, the Court proceeded to give separate and independent reasons in support of its conclusion. *See* Opinion at 33-34.

Finally, Plaintiff states in her motion for reconsideration that "[t]here was absolutely no evidence in this case that Ms. Morse received any feedback from a lawyer or anyone else on the issue of compliance with the FLSA prior to February 1, 2008" despite the fact that the Court "repeatedly states as fact" that she did. Plaintiff urges the Court to vacate its Opinion on this ground.

First, no where in the Opinion did the Court state as a fact that Morse *actually* received feedback from a lawyer or anyone else before February 1, 2008, on the issue of Steppingstone's compliance with the FLSA. Rather, the Court stated as a fact that Morse *told* Plaintiff that she had received feedback on the issue. Second, even if the Court made an erroneous factual finding in this regard, which it did not, Plaintiff has not stated if or why the fact in question is a material one. Therefore, Plaintiff has not shown "that correcting the defect will result in a different disposition of the case." *See* E.D. Mich. LR 7.1(g)(3).

## IV. ORDER

For the reasons stated above,

IT IS ORDERED that Plaintiff's Motion for Rehearing/Reconsideration [docket entry 38] is denied.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2009

CERTIFICATE OF SERVICE

8

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 30, 2009.

s/Denise Goodine
Case Manager